IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTOR ANDREW APODACA,

       Plaintiff,

vs.                                                                                    No. CIV 19-0388 JB/GJF

FNU LNU, BETTY JUDD,
FNU VALDEZ, A. JIM,
D. BROWN,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Prisoner Civil Tort Complaint Pursuant to the New Mexico Tort Claims Act, Chapter 41 N.M.S.A., filed March 21, 2019 (Doc. 1-1)("Complaint").  Plaintiff Victor Andrew Apodaca is incarcerated and proceeding pro se.  See Complaint at 2.  Apodaca asserts that prison officials violated his right to access courts by refusing to provide more than two free stamps per week, when his inmate account was in arrears.  See Complaint ¶ 1 at 1.  Having carefully reviewed the matter under 28 U.S.C. § 1915A and rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court will dismiss the Complaint, but grant leave to amend.

## FACTUAL AND PROCEDURAL BACKGROUND

Apodaca is a state inmate at the Northwest New Mexico Correctional Facility ("NNMCF") in Grants, New Mexico.  See Complaint ¶ 3, at 2.  In this action, he challenges NNMCF's enforcement of CD Policy 151200, which governs prison correspondence. See Complaint ¶ 1 at 1. CD Policy 151200 provides, relevant part:

**A.  Limits on Correspondence:**

When the inmate bears the mailing cost, there is no limit on the volume of letters the inmate can send or receive . . .

**B.  Postage and Writing Materials:**

. . .

2.      All inmates in Level II, III, IV, V, and VI security facilities will receive postage for two (2) First-class letters per week for personal, legal, or privileged correspondence.

3.      *Indigent* inmates in Level I security facilities will receive postage for two (2) First-class letters per week.

4.      Inmates will pay the cost of any additional mail by attaching a debit memo.

5.      A reasonable amount of postage for the following categories of mail will be supplied by the facilities for *indigent* inmates:

Attorneys, recognized agencies that provide legal assistance, the courts and disciplinary appeals addressed to the disciplinary appeals officer, classification appeals … , Parole Board members, the Secretary of Corrections, Department staff located at Central Office, federal and state legislators, and the Governor of New Mexico.

New Mexico Corrections Department (NMCD) Correspondence Regulation, CD Policy 151200 (attached to Complaint at 7)(emphasis in original).

The Complaint does not specify whether NNMCF is a Level I, II, III, IV, V, or VI facility. However, Apodaca alleges "here at [NNMCF] they give[] two stamped envelopes. . . ." Complaint ¶ 5, at 4.  The Court discerns that NNMCF provides postage for Apodaca to send at least two letters per week and that he must pay for additional postage unless he is indigent.  See Complaint ¶ 1, at 1.  In January, 2019, Apodaca placed three un-stamped letters in the outgoing mail bin at NNMCF. See Complaint ¶ 5, at 5.  He directed the letters to the United States  Board of Veteran's Appeals; the Supreme Court of the United States; and New Mexico's Fifth Judicial District Court.  See

Complaint at 5.  On or about January 14, 2019, Valdez allegedly issued a rejection notice and declined to supply free postage for the letters.  See Complaint ¶ 5, at 5.  The notice, which is attached to the Complaint, states: "Your legal mail has been rejected due to insufficient funds." CCA-Northwest New Mexico Correctional Center Inmate Request, (attached to the Complaint at 13).  The notice further states Apodaca is in arrears and owes NNMCF $238.50 for unpaid copies; $64.41 for unpaid postage; and ten dollars for unpaid property.  See CCA-Northwest New Mexico Correctional Center Inmate Request, attached to the Complaint at 13.  Apodaca told Valdez that he is indigent, but she allegedly stated: "You are not indigent[,] you have .47 cents on your account."  Complaint ¶ 5, at 5.  It is unclear whether Apodaca could access those funds, which may have been frozen because of his arrears.  See Complaint ¶ 5, at 3-4.

Apodaca further complains that, beyond the refusal to exceed postage limits in January, 2019, "every paycheck goes to" litigation costs, including "court order[ed] [filing fee] deductions and postage and copies."  Complaint ¶ 5,  at 4.  Apodaca is pursing litigation before the Court;[1] the Board of Veterans Appeals in Washington, District of Columbia; the United States Supreme Court; New Mexico's Fifth Judicial District Court; and New Mexico's Eighth Judicial District Court.  See Complaint at 3.  Apodaca attaches a copy of his financial records to the Complaint, which reflect that he earned an average of about $44.00 per month between July, 2018, and January, 2019, and nearly all of his expenditures are for postage or filing fees in various cases. See Account Transaction History from 07/01/2018 to 1/23/2019, attached to Complaint at 17-19. Because of his litigation expenses, Apodaca purportedly cannot buy "t-shirts, shoes, socks,

---

[1]The federal CM/ECF filing system reflects that Apodaca has filed at least ten lawsuits in this Court.  See CIV 15-0061 JAP\LF; CIV 16-0096 MV\LF; CIV 16--1227 WJ\GJF; CIV 18-0108 MV\SMV; CIV 18-0504 MV\SCY; CIV 18--0671 KWR\CG; CIV 19-0147 WJ\JFR; CIV 19-0348 JCH\KRS; 19--0571 JCH\GBW; CIV 19-1209 WJ\KBM.

sweat[s] top[s] or bottom[s], razors, music, food, [or] … healthcare items" from the prison canteen. Complaint ¶ 5, at 4.  He only has access to the items that NNMCF issues, i.e., "two stamped envelopes and two piece[s] of paper, a bar" of "motel soap[] and motel shampoo, one razor, and a small tube of toothpaste and two rolls of toilet paper."  Complaint ¶ 5, at 4.  It appears Apodaca receives these items each week, but the Complaint is not entirely clear on this point.  See Complaint ¶ 5, at 4.  Apodaca alleges that the limited distribution of free personal items is "criminal." Complaint ¶ 5, at 4-5.  When Apodaca complained, Warden Smith allegedly told Apodaca that he "must choose between legal mail or his coffee."  Complaint ¶ 5, at 4.  Apodaca also contends that his former prison, the Lea County Correction Facility, only distributed two free 42 U.S.C. § 1983 litigation packets to each inmate and that he had to purchase any additional packages.  See Complaint ¶ 5, at 4.

Based on these facts, the Complaint alleges claims for violation of the right to access courts under the United States Constitution; the New Mexico Constitution; 42 U.S.C. § 1983; and the New Mexico Tort Claims Act, N.M.S.A. 1978 § 41-4-1, et. seq.  See Complaint ¶ 1, at 2. Construed liberally, the Complaint also may raise an Eighth Amendment claim for cruel-and-unusual punishment, as a result of the limited provision of free personal items.  See Complaint ¶ 5, at 4-5.  Plaintiff seeks at least $50,000 in damages from each of the following Defendants: (i) New Mexico Corrections Department ("N.M.C.D"); (ii) Deputy Secretary of Operations "Jane or John;" (iii) Current Jane or John Doe Secretary of Corrections; (iv) CoreCivic Warden Betty Judd; (v) Ms. Valdez; (vi) "Accounts Ms. A. Jim;" and (vii) Mr. D-Brown.  Complaint ¶ 1-3, at 2; id. ¶ 5, at 6.  Apodaca also appears to seek an injunction "mak[ing] all legal mail, copies, [and] notar[ies] free."  Complaint ¶ 5, at 6.

Apodaca originally filed the Complaint in New Mexico's Thirteenth Judicial District Court,

Case No. D-1333-CV-2019-00092.  See Complaint ¶ 1, at 1.  It appears that he only served  Judd, Jim, and Valdez (the "CoreCivic Defendants").   Notice of Removal at 3, filed April 26, 2020 (Doc. 1)("Notice of Removal").  The CoreCivic Defendants removed the Complaint to this Court on April 26, 2020, within thirty days after service.  See Notice of Removal at 2.  The CoreCivic Defendants paid the filing fee, and the matter is ready for initial review under 28 U.S.C. § 1915A.

## LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS

Section 1915A of Title 28 of the United States Code requires the court to conduct a sua sponte review of all civil complaints where the plaintiff is incarcerated and seeks relief from a government official.  See 28 U.S.C. § 1915A.  The court must dismiss any in forma pauperis complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).  The court also may dismiss a complaint sua sponte under rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(internal quotation marks omitted).  In other words, the same standard of review applies under rule 12(b)(6) and § 1915(e).

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).  A complaint's sufficiency is a question of law, and when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a

motion to dismiss." (quoting <u>Makor Issues & Rights, Ltd. v. Tellabs, Inc</u>, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd</u>.))); <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555 (citations and footnote omitted).

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."  <u>Mink v. Knox</u>, 613 F.3d 995, 1000 (10th Cir. 2010)(citing <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  <u>Ridge at Red Hawk, L.L.C.</u>

v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The United States Court

of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citation omitted)(quoting Bell Atl.

Corp. v. Twombly, 550 U.S. at 570).

In conducting the initial review, a pro se prisoner's pleadings "are to be construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers."  Hall v. Bellmon,

935 F.2d at 1110.  If the court can "reasonably read the pleadings to state a valid claim on which

the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal

authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction,

or . . . unfamiliarity with pleading requirements."  Hall v. Bellmon, 935 F.2d at 1110.  At the same

time, however, pro parties must file a legible pleading that complies with rule 8 of the Federal

Rules of Civil Procedure.  That rule requires: "(1) a short and plain statement of the grounds for

the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader

is entitled to relief; and (3) a demand for the relief sought[.]"  Fed. R. Civ. P. 8(a).  "It is not the

role of . . . the court . . . to sort through a lengthy . . . complaint and voluminous exhibits . . . to

construct plaintiff's causes of action."  McNamara v. Brauchler, 570 F. App'x 741, 743 (10th Cir.

2014(unpublished)(citations omitted).  See also Pola v. Utah, 458 F. App'x 760, 761 (10th Cir.

2012)(unpublished)(affirming dismissal of complaint that "included everything but the kitchen

sink").  Allowing such pleadings to survive screening "would force the Defendants to carefully

comb through" various documents "to ascertain which . . . pertinent allegations to which a

response is warranted." <u>McNamara v. Brauchler</u>, 570 F. App'x at 743.

<u>**LAW REGARDING 42 U.S.C. § 1983**</u>

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute.  See <u>Nelson v. Geringer</u>, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights.").  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a valid claim under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

<u>Schaefer v. Las Cruces Public Sch. Dist.</u>, 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting <u>Summum v. City of Ogden</u>, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Supreme Court of the United States clarified that, in alleging a § 1983 action against a government agent in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."

- 8 -

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Consequently, there is no respondeat superior liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. at 675; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities cannot be held liable solely on the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978).  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)(internal quotation marks omitted)).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal limits, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, No. CIV 11-0011 JB/RHS 2011, WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility

for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution[]"

614 F.3d at 1199 (quoting 42 U.S.C. § 1983). The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct." Dodds v. Richardson, 614 F.3d at 1200-01.

The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed. See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371). The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## LAW REGARDING RIGHT TO ACCESS COURTS

The right to access courts implicates the First Amendment, the Fifth Amendment, and the Due Process Clause of the Constitution of the United States of America. See Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990); Love v. Summit County, 776 F.2d 908, 912 (10th Cir. 1985)

(same).  The New Mexico Constitution also guarantees inmates the right to access courts.  See Cordova v. LeMaster, 2004-NMSC-026, ¶ 10, 96 P.3d 778, 781.  New Mexico looks to federal standards in defining the contours of the state constitutional right to access courts (setting out the legal standard using cases from the Supreme Court and the Tenth Circuit.   See Cordova v. LeMaster, 2004-NMSC-026, ¶ 10, 96 P.3d at 781.  See also State v. Vincent, 2005-NMCA-064, ¶ 26, 112 P.3d 1119, 1127 (citing federal law in case involving the right to access courts).

The Supreme Court holds that inmate must receive "a reasonably adequate opportunity to present claim[s] . . . to the courts."  Lewis v. Casey, 518 U.S. 343, 350 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)).  The right focuses on the "conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Lewis v. Casey, 518 U.S. at 356.  See Christopher v. Harbury, 536 U.S. 403, 415 (2002) (a plaintiff must demonstrate he was effectively "shut out of court").  The right to access courts does not require authorities to supply resources guaranteeing an inmate's ability "to litigate effectively once in court."  Lewis v. Casey, 518 U.S. at 354, 360.  See Carper v. DeLand, 54 F.3d 613, 617 (10th Cir. 1995)(prison officials are not required to assist inmates "beyond the preparation of initial pleadings").  Prison officials, however, "may not erect barriers that impede the right of access of incarcerated persons."  Carper v. DeLand, 54 F.3d at 617.

Beyond demonstrating a lack of access, a plaintiff must also allege facts in his complaint suggesting an actual injury.  See Lewis v. Casey, 518 U.S. at 351-52.  In Lewis v. Casey, the Supreme Court held:

> [M]eaningful access to the courts is the touchstone, and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in [prison correspondence] . . . program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably

> actionable harm that he wished to bring before the courts, but was so stymied by inadequacies . . . that he was unable even to file a complaint.

Lewis v. Casey, 518 U.S. at 351.  As Lewis v. Casey explains, the impairment of any legal claim does not satisfy the actual legal requirement.  See Collier v. Nelson, 202 F.3d 281 (10th Cir. 2000)(unpublished table decision)(quoting Lewis v. Casey, 518 U.S. at 354).  Prisons must provide resources "that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  Collier v. Nelson, 202 F.3d 281 (citing Lewis v. Casey, 518 U.S. at 354).  See also Wolff v. McDonnell, 418 U.S. 539, 576 (1974)(chief aim of access precedents is to "protect[ ] the ability of an inmate to prepare a petition or complaint").  "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Collier v. Nelson, 202 F.3d 281 (citing Lewis v. Casey, 518 U.S. at 354).  See also Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x 965, 967 (10th Cir. 2001)(affirming dismissal of access to courts claim, and noting that "it is not enough for [the plaintiff] to state that he is unable to file motions or briefs").

As to litigation resources, prison officials must provide an inmate with at least some incidentals necessary to pursue legal action, such as paper, a pen, copying and postage.  See Bounds v. Smith, 430 U.S. at 824 (pen and paper); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980)(copying); Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978)(postage).  However, "[r]easonable regulations are necessary to balance the rights of prisoners with budgetary considerations."  Twyman v. Crisp, 584 F.2d at 359.  Prison officials are not required to provide inmates "with an unlimited right to free postage in connection with the right of access to the courts."  Twyman v. Crisp, 584 F.2d at 359.  Prison officials may also place "reasonable limits on amounts 'advanced' to inmates for copying and postage" when the inmate is in arrears.  Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x 965, 967 (10th Cir. 2001)(blessing policy that limits

free postage where inmate account is more than $300.00 in arrears).

A survey of Tenth Circuit case law reflects that prison officials do not violate the right to access courts where they provide the equivalent of at least two free stamps per week.  See Twyman v. Crisp, 584 F.2d 352, 358 (10th Cir. 1978)(rejecting access to courts claims where prison officials provided two posted letters per week if inmate had less than $5.00 in trust account); Smith v. Cooper, 2 F.3d 1161, 1162 (10th Cir. 1993)(unpublished table decision)(prison officials did not violate the constitution by "permitting two free legal letters per week for indigent prisoners"); Collier v. Nelson, 202 F.3d 281 (10th Cir. 2000)(affirming dismissal of access to courts claim where plaintiff obtained 4 free stamped envelopes per month, and there was no actual injury); Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x at 967 (rejecting access to courts claim where inmates were "allowed no more than a $2.00 per month advance on future earnings for copying and postage").

When evaluating postage limitations, several Tenth Circuit cases also consider the plaintiff's litigation history and the duration of time where he lacked postage.  See, e.g., Guinn v. Zavaras, 100 F.3d 967 (10th Cir. 1996)(unpublished table decision)(holding the law "does not guarantee an inmate the wherewithal to transform himself into a litigating engine capable of filing any type of action"); Beville v. Ednie, 74 F.3d 210, 213 (10th Cir. 1996)("The length of incarceration without access to legal materials may affect[ ] whether a prisoner's rights were violated."); Barry v. Wilson, 91 F.3d 159 (10th Cir. 1996)(unpublished table decision)(finding a five-day delay in access to legal materials was not a constitutional violation); Cotner v. Knight, 61 F.3d 915 (10th Cir. 1995)(unpublished table decision)("[A]s evidenced by the Plaintiff's numerous pleadings within this case alone, he has not been denied access to the courts by a lack of photocopying and postage."); Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994)("[T]here may

be cases where a prisoner is denied access for such a short time that prejudice would have to be shown.").

## ANALYSIS

The Complaint alleges prison officials violated Apodaca's right to access courts in January, 2019, by limiting his right to free postage when his inmate account was over $300.00 in arrears. See Complaint ¶¶ 4-5, at 3-5; CCA-Northwest New Mexico Correctional Center Inmate Request, attached to Complaint at 13.  Valdez allegedly told Apodaca he was not indigent because he had $0.47 in his inmate account, but the account was frozen purportedly.  See Complaint ¶ 5, at 5. Although inmates "at [NNMCF]" receive "two [free] stamped envelopes" per week, it appears Apodaca had already used that allotment and still wished to mail letters to the United States Board of Veteran's Appeals; the Supreme Court of the United States of America; and New Mexico's Fifth Judicial District Court.  See Complaint ¶ 5, at 4-5.  Apodaca also complains more generally that, without unlimited free postage, he must spend all of his inmate earnings on legal fees and cannot buy "t-shirts, shoes, socks, sweat[s] top[s] or bottom[s], razors, music, food, [or] . . . healthcare items" from the prison canteen.  Complaint ¶ 5, at 4.  Apodaca has access only to the items NNMCF issues, i.e., "two stamped envelopes and two piece[s] of paper, a bar" of "motel soap[] and motel shampoo, one razor, and a small tube of toothpaste and two rolls to toilet paper," which he believes is "criminal."  Complaint ¶ 5, at 4-5.

As noted above, the Tenth Circuit has held explicitly that prison officials do not violate the Constitution where, as here, they provide two free stamps per week and charge for any additional postage.  See Twyman v. Crisp, 584 F.2d at 358 (rejecting access to courts claims where prison officials provided two posted letters per week if inmate had less than $5.00 in trust account); Smith v. Cooper, 2 F.3d at 1161 (unpublished table decision)(prison officials did not violate the

constitution by "permitting two free legal letters per week for indigent prisoners"). The Tenth Circuit has held further that prison officials do not violate the Constitution by declining to provide free postage when an inmate's account is in arrears. See Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x 965, 967 (10th Cir. 2001)(upholding prison policy that limited free postage to accounts that are more than $300.00 in arrears). Apodaca alleges NNMCF provides two free stamped letters per week, and the attachments to his Complaint reflect his inmate account was more than $300.00 in arrears. See Complaint ¶¶ 4-5, at 3-5; CCA-Northwest New Mexico Correctional Center Inmate Request, attached to Complaint at 13. Thus, even if Valdez was incorrect regarding Apodaca's indigency status -- based on the $0.47 in his account -- the limitations on postage did not violate his right to access courts. The Court also observes that, based on his voluminous filings in this case and in other federal court cases, it appears Apodaca is able to file legal documents.[2]

Beyond any access issues, the Complaint does not demonstrate prejudice as a result of the postage limitations. Apodaca does not allege he needs postage "to attack [his] sentences, directly or collaterally," or "to challenge the conditions of [his] confinement." Collier v. Nelson, 202 F.3d at 281 (citing Lewis v. Casey, 518 U.S. at 354). There is also no indication how long he went without postage or how any mailing delays impacted a non-frivolous legal claim. Construed as a

---

[2]Excluding this lawsuit, the federal CM/ECF filing system reflects that Apodaca filed at least four other lawsuits in this Court after the mailing issues in January, 2019. See CIV 19-0147 WJ\JFR; CIV 19-0348 JCH\KRS; CIV 19-0571 JCH\GBW; CIV 19-1209 WJ\KBM.

In this case, Apodaca filed a response opposing initial review; a motion for default judgment; an affidavit in support of default judgment; two ex parte letters, and two notices regarding his claims and removal to this Court. See Plaintiff Answer to Motion to Screen and Stay Proceedings and Make a Prima Facie Case, filed May 10, 2019 (Doc. 6); Ex Parte Letter by Plaintiff (May 9, 2019), filed May 13, 2019 (Doc. 7); Ex Parte Letter by Plaintiff, filed May 24, 2019 (Doc. 8); Motion for Default Judgment by Victor Andrew Apodaca, Sr., filed May 29, 2019 (Doc. 9); Affidavit for Entry of Default Judgment and Motion, filed June 29, 2019 (Doc. 10); Pretrial Discovery and Evidentiary Hearing Order to Show Cause Motion, filed June 29, 2019 (Doc. 11); Notice of Removal, filed October 22, 2019 (Doc. 12).

whole, the Complaint suggests that any injury is traceable to Apodaca's "failure to use his monthly allotment in a responsible manner," "as opposed to" the postage limitations.  United States v. Santiago, 199 F. Supp. 3d 1287, 1289-90 (D. Colo. 2016)(Blackburn, J.)(dismissing access to court claim based on postage limitations).  See also Guinn v. Zavaras, 100 F.3d at 967 (noting the law "does not guarantee an inmate the wherewithal to transform himself into a litigating engine capable of filing any type of action").  Apodaca, therefore, does not state a claim based on the postage limitations.

To the extent that the Complaint raises a conditions of confinement claim under the Eighth Amendment and 42 U.S.C. § 1983, based on the lack of free amenities, this argument also fails. Smith allegedly told Apodaca he "must choose between legal mail or his coffee."  Complaint at 4. This statement is consistent with binding precedent.  The Tenth Circuit holds: "To require a prisoner who wishes to prosecute several legal actions simultaneously to have to choose occasionally between stamps and coffee is certainly no more a restriction than that which any indigent pro se non-prisoner must face."  Twyman v. Crisp, 584 F.2d at 358.  In other words, prison officials do not violate the Constitution by forcing an inmate to choose between canteen purchases and prolific litigation.  See Cosby v. Meadors, 351 F.3d 1324, 1327 (10th Cir. 2003)("When a prisoner has sufficient income to pay a monthly partial filing fee and instead spends his money on amenities at the prison canteen, he cannot be excused for failing to pay . . ."); Childs v. Ortiz, 259 Fed. App'x 139, 141 (10th Cir. 2007)(rejecting argument that prisoner could not comply with court orders, where he had to "choose between basic hygiene necessities monthly and monthly postage").

The Court also concludes that the limited provision of free hygiene items does not amount to cruel and unusual punishment.  Prison officials must ensure inmates receive the "minimal

civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Conditions amount to cruel and unusual punishment when they "lead to deprivations of essential food, medical care, . . . [or] sanitation." Rhodes v. Chapman, 452 U.S. at 348. The weekly provision of a bar of soap, shampoo, one razor, a small tube of toothpaste, two rolls of toilet paper does not impact health or sanitation. See DeSpain v. Uphoff, 264 F.3d 965, 973 (10th Cir. 2001)("The constitution does not mandate comfortable prisons[;] . . . a prisoner must show that conditions were more than uncomfortable, and instead rose to the level of conditions posing a substantial risk of serious harm to inmate health or safety.")(quotations omitted). Apodaca also does not allege any prison official has "a sufficiently culpable state of mind," as the Eighth Amendment requires. Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998). Accordingly, the Complaint fails to state a cognizable constitutional claim based on the limited provision of free hygiene items.

Having determined the allegations do not state a cognizable claim for violation of the right to access courts, or cruel and unusual punishment, the Court will dismiss the Complaint pursuant to 28 U.S.C. § 1915A(b)(1). The Tenth Circuit counsels that courts ordinarily should give pro se inmates an opportunity to remedy defects in their pleadings. See Hall v. Bellmon, 935 F.2d at 1110. Courts need not invite an amendment, however, when any amended claims would also be subject to immediate dismissal under rule 12(b)(6) or 28 U.S.C. § 1915A. See Bradley v. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004). Leave to amend is not likely to produce a viable cause of action, as the claims fail for multiple reasons. The Court, however, will afford more process and grant leave to file a single amended complaint within thirty days of this Memorandum Opinion and Order's entry. If Apodaca declines to file a single amended complaint, or files another complaint that does not comply with rule 12(b)(6) and the pleading standards set forth herein, the

Court will dismiss this action with prejudice and without further notice.

**IT IS ORDERED** that: (i) the Prisoner Civil Tort Complaint Pursuant to the New Mexico Tort Claim Act, 41 N.M.S.A., filed March 21, 2019 (Doc. 1-1), is dismissed without prejudice, and (ii) Plaintiff Victor Apodaca may file a single, legible amended complaint within thirty days of this Memorandum Opinion and Order's entry.

_____
UNITED STATES DISTRICT JUDGE

*Parties:*

Victor Apodaca
Grants, New Mexico

　　　*Plaintiff pro se*