**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VICTOR ANDREW APODACA,

        Plaintiff,

vs.                                                 No. CIV 19-0388 JB/GJF

FNU LNU, FNU VALDEZ,
BETTY JUDD, A. JIM, and
D. BROWN,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court following Plaintiff Victor Apodaca's failure to amend his defective pleading.  Apodaca is incarcerated and proceeding pro se.  See Prisoner Civil Tort Complaint Pursuant to the New Mexico Tort Claims Act, Chapter 41 N.M.S.A., filed March 21, 2019 (Doc. 1-1)("Original Complaint").  The Court previously dismissed Apodaca's Original Complaint, which raises First Amendment access-to-court claims and Eighth Amendment conditions-of-confinement claims, for failure to state a claim upon which relief may be granted, but granted leave to amend.  See Memorandum Opinion and Order, filed January 15, 2021 (Doc. 14)("Screening MOO").  Because Apodaca failed to file an amended complaint, the Court will dismiss this action with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Apodaca is a state inmate at the Northwest New Mexico Correctional Facility ("NNMCF") in Grants, New Mexico.  See Original Complaint at 2.  In the Original Complaint, Apodaca challenges NNMCF's enforcement of CD Policy 151200, which governs prison correspondence. See Original Complaint at 2.   CD Policy 151200 provides, in relevant part:

**A.  Limits on Correspondence:**

> When the inmate bears the mailing cost, there is no limit on the volume of letters the inmate can send or receive . . . .

> **B. Postage and Writing Materials:**

>> . . .

>> 2. All inmates in Level II, III, IV, V, and VI security facilities will receive postage for two (2) First-class letters per week for personal, legal, or privileged correspondence.

>> 3. *Indigent* inmates in Level I security facilities will receive postage for two (2) First-class letters per week.

>> 4. Inmates will pay the cost of any additional mail by attaching a debit memo.

>> 5. A reasonable amount of postage for the following categories of mail will be supplied by the facilities for *indigent* inmates:

>>> Attorneys, recognized agencies that provide legal assistance, the courts and disciplinary appeals addressed to the disciplinary appeals officer, classification appeals . . . , Parole Board members, the Secretary of Corrections, Department staff located at Central Office, federal and state legislators, and the Governor of New Mexico.

New Mexico Corrections Department ("NMCD") Correspondence Regulations, CD Policy 151200, attached to Original Complaint at 7 (emphasis in original).

In the Original Complaint, Apodaca does not specify whether NNMCF is a Level I, II, III, IV, V, or VI facility. However, the Plaintiff alleges "here at [NNMCF] they give[] two stamped envelopes . . . ." Original Complaint at 4. The Court discerns that NNMCF provides postage for Apodaca to send at least two letters per week, and that he must pay for additional postage unless he is indigent. See Original Complaint at 4-5. In January of 2019, Apodaca placed three unstamped letters in the outgoing mail bin at NNMCF. See Original Complaint at 5. He directed the letters to the United States Board of Veteran's Appeals; the United States Supreme Court; and New Mexico's Fifth Judicial District Court. See Original Complaint at 5. On or about January

14, 2019, Ms. Valdez allegedly issued a rejection notice and declined to supply free postage for the letters.   See Original Complaint at 5.   The notice, which is attached to the Original Complaint, states: "Your legal mail has been rejected due to insufficient funds."   See CCA-Northwest New Mexico Correctional Center Inmate Request, attached to Original Complaint at 13.   The notice further states that Apodaca is in arrears and owes NNMCF $238.50 for unpaid copies; $64.41 for unpaid postage; and $10.00 for unpaid property.   See CCA-Northwest New Mexico Correctional Center Inmate Request, attached to Original Complaint at 13.   Apodaca told Ms. Valdez that he was indigent, but she allegedly stated: "You are not indigent[,] you have .47 cents on your account."   Original Complaint at 5.   It is unclear whether Apodaca could access those funds, which may have been frozen due to his arrears.   See Original Complaint at 3-4.

In the Original Complaint, Apodaca further alleges that, beyond NNMCF's refusal to exceed postage limits in January of 2019, "every paycheck goes to" litigation costs, including "court order[ed] [filing fee] deductions and postage and copies."   Original Complaint at 4. Apodaca is pursuing litigation before this Court;[1] the Board of Veterans Appeals in Washington, District of Columbia; the United States Supreme Court; New Mexico's Fifth Judicial District Court; and New Mexico's Eighth Judicial District Court.   See Original Complaint at 3.   The Original Complaint attaches a copy of Apodaca's financial records, which reflect that he earned an average of about $44.00 per month between July of 2018 and January of 2019, and nearly all of his expenditures are for postage or filing fees in various cases.   See Account Transaction History from 07/01/2018 to 1/23/2019, attached to Original Complaint at 17-19.   Because of his

---

[1]The federal CM/ECF filing system reflects that Apodaca has filed at least ten lawsuits in this Court.   See 15-cv-0061 JAP-LF; 16-cv-0096 MV-LF; 16-cv-1227 WJ-GJF; 18-cv-0108 MV-SMV; 18-cv-0504 MV-SCY; 18-cv-0671 KWR-CG; 19-cv-0147 WJ-JFR; 19-cv-0348 JCH-KRS; 19-cv-0571 JCH-GBW; 19-cv-1209 WJ-KBM.

litigation expenses, Apodaca purportedly cannot buy "t-shirts, shoes, socks, sweat[s] top[s] or bottom[s], razors, music, food, [or] . . . healthcare items" from the prison canteen.   Original Complaint at 4.   He alleges that he only has access to the items NNMCF issues, i.e., "two stamped envelopes and two piece[s] of paper, a bar" of "motel soap[] and motel shampoo, one razor, and a small tube of toothpaste and two rolls to toilet paper."   Original Complaint at 4.   It appears that Apodaca receives these items each week, but the Original Complaint is not entirely clear on this point.   The Original Complaint alleges the limited distribution of free personal items is "criminal." See Original Complaint at 4-5.   When Apodaca complained, Warden Smith allegedly told Apodaca that he "must choose between legal mail or his coffee."   Original Complaint at 4.   The Original Complaint also alleges that Apodaca's former prison, the Lea County Correction Facility, only distributed two free 42 U.S.C. § 1983 litigation packets to each inmate, and he had to purchase any additional packages.   See Original Complaint at 4.

Applying liberal construction, the Court determined that the Original Complaint raises claims for violation of the right to access courts under the U.S. Constitution, the New Mexico Constitution, 42 U.S.C. § 1983, and the New Mexico Tort Claims Act, N.M.S.A. 1978 § 41-4-1, et. seq.  See Original Complaint at 2.   The Court also assumed Apodaca intends to raise an Eighth Amendment claim for cruel and unusual punishment, based on the limited provision of free personal items.   See Original Complaint at 5.   The Original Complaint seeks at least $50,000 in damages from each of the following Defendants: (i) NMCD; (ii) Deputy Secretary of Operations, "Jane or John;" (iii) Current Jane or John Doe Secretary of Corrections; (iv) CoreCivic Warden Betty Judd; (v) Ms. Valdez; (vi) "Accounts Ms. A. Jim;" and (vii) Mr. D-Brown.   See Original Complaint at 2, 6.   The Original Complaint also appears to seek an injunction "mak[ing] all legal mail, copies, [and] notar[ies] free."   Original Complaint at 6.

Apodaca initially filed the Original Complaint in New Mexico's Thirteenth Judicial District Court, Case No. D-1333-CV-2019-00092.  See Original Complaint at 1.  It appears he only served Defendants Judd, Jim, and Valdez (the "CoreCivic Defendants").  See Notice of Removal at 3, filed April 26, 2020 (Doc. 1)("Notice of Removal").  The CoreCivic Defendants removed the Original Complaint to this Court on April 26, 2019, within thirty days after service. See Notice of Removal at 2.  On January 15, 2021, the Court issued its Screening MOO, which held that the Original Complaint: (i) fails to state a cognizable claim for violation of the right to access courts; and (ii) fails to state a cognizable claim for cruel and unusual punishment, based on Apodaca's conditions of confinement.  See Screening MOO at 1.

Consistent with Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), and Apodaca's status as a pro se prisoner, the Court sua sponte granted leave to file an amended complaint.  See Screening MOO at 18-19.  The deadline to amend was February 14, 2021.  See Screening MOO at 19.  Apodaca did not comply, show cause for such failure, or otherwise respond to the Screening MOO.  The Court will, therefore, summarize the reasons for dismissing the Original Complaint and dismiss this action with prejudice.

**LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS**

Section 1915A of Title 28 of the United States Code requires the court to conduct a sua sponte review of all civil complaints where the plaintiff is incarcerated and seeks relief from a government official.  See 28 U.S.C. § 1915A.  The court must dismiss any in forma pauperis complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A(b).  The court may also dismiss a complaint sua sponte under rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile."  Hall v. Bellmon, 935 F.2d

- 5 -

1106, 1110 (10th Cir. 1991) (internal quotation marks omitted).   In other words, the same standard of review applies under rule 12(b)(6) and § 1915(e).

Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)).   A complaint's sufficiency is a question of law, and when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007)("[O]nly '[i]f a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts' would the defendant prevail on a motion to dismiss." (quoting Makor Issues & Rights, Ltd. v. Tellabs, Inc, 437 F.3d 588, 602 (7th Cir. 2006)(second alteration in Tellabs, Inc. v. Makor Issues & Rights, Ltd.))); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.   "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."   Bell Atl. Corp. v.

Twombly, 550 U.S. at 555 (citations and footnote omitted).

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that, if assumed to be true, state a claim to relief that is plausible on its face."   Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).   "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."   Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).   The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."   The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citation omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

In conducting the initial review, a pro se prisoner's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."   Hall v. Bellmon, 935 F.2d at 1110.   If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements."   Hall v. Bellmon, 935 F.2d at 1110.   At the same

time, however, pro parties must file a legible pleading that complies with rule 8.   That rule requires: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]"   Fed. R. Civ. P. 8(a).   "It is not the role of . . . the court . . . to sort through a lengthy . . . complaint and voluminous exhibits . . . to construct plaintiff's causes of action." McNamara v. Brauchler, 570 F. App'x 741, 743 (10th Cir. 2014(unpublished)(citations omitted). See also Pola v. Utah, 458 F. App'x 760, 761 (10th Cir. 2012)(unpublished)(affirming dismissal of complaint that "included everything but the kitchen sink").   Allowing such pleadings to survive screening "would force the Defendants to carefully comb through" various documents "to ascertain which . . . pertinent allegations to which a response is warranted."   McNamara v. Brauchler, 570 F. App'x at 743.

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.   Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute.   See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights")(internal quotation marks, alteration, and citation omitted).   Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.   To state a valid claim under § 1983, a plaintiff must allege: (i) a

deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.   See West v. Atkins, 487 U.S. 42, 48 (1988).   The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Public Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Supreme Court of the United States clarified that, in alleging a § 1983 action against a government agent in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).   Consequently, there is no respondeat superior liability under § 1983.   See Ashcroft v. Iqbal, 556 U.S. at 675; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).   Entities cannot be held liable solely on the existence of an employer-employee relationship with an alleged tortfeasor.   See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978).   Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts.   See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.   See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)(internal quotation marks omitted)).   The Tenth Circuit also recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an

employee's or subordinate's constitutional violations.   See Garcia v. Casuas, No. CIV 11-0011 JB/RHS 2011, WL 7444745, at \*25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).   The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."   Ashcroft v. Iqbal, 556 U.S. at 676.   The Tenth Circuit in Dodds v. Richardson stated:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution[]"

614 F.3d at 1199 (quoting 42 U.S.C. § 1983).   The Tenth Circuit has noted, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."   Dodds v. Richardson, 614 F.3d at 1200.   It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."   Dodds v. Richardson, 614 F.3d at 1200.   More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct."   Dodds v. Richardson, 614 F.3d at 1200-01.

The specific example that the Tenth Circuit used to illustrate this principle is Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual

police officers committed.   See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode,
423 U.S. at 371).   The Tenth Circuit noted that the Supreme Court in that case found a sufficient
link between the police misconduct and the city officials' conduct, because there was a deliberate
plan by some of the named defendants to "crush the nascent labor organizations."   Dodds v.
Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## LAW REGARDING RIGHT TO ACCESS COURTS

The right to access courts implicates the First Amendment, the Fifth Amendment, and the
Due Process Clause of the U.S. Constitution.   See Smith v. Maschner, 899 F.2d 940, 947 (10th
Cir. 1990); Love v. Summit County, 776 F.2d 908, 912 (10th Cir. 1985) (same).   The New Mexico
Constitution also guarantees inmates the right to access courts.   See Cordova v. LeMaster, 2004-
NMSC-026, ¶ 10, 136 N.M. 217, 136, 96 P.3d 778, 781.   New Mexico looks to federal standards
in defining the contours of the state constitutional right to access courts.   Id. (setting out the legal
standard using cases from the United States Supreme Court and the Tenth Circuit Court of
Appeals); see also State v. Vincent, 2005-NMCA-064, ¶ 26, 137 N.M. 462, 470, 112 P.3d 1119,
1127 (citing federal law in case involving the right to access courts).

The United States Supreme Court holds that inmate must receive "a reasonably adequate
opportunity to present claim[s] … to the courts."   Lewis v. Casey, 518 U.S. 343, 350 (1996)
(quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)).   The right focuses on the "conferral of a
capability—the capability of bringing contemplated challenges to sentences or conditions of
confinement before the courts."   Lewis v. Casey, 518 U.S. at 356.   See also Christopher v.
Harbury, 536 U.S. 403, 415 (2002) (a plaintiff must demonstrate he was effectively "shut out of
court").   The right to access courts does not require authorities to supply resources guaranteeing
an inmate's ability "to litigate effectively once in court."   Lewis v. Casey, 518 U.S. at 354, 360;

Carper v. DeLand, 54 F.3d 613, 617 (10th Cir. 1995) (prison officials are not required to assist

inmates "beyond the preparation of initial pleadings").   However, prison officials "may not erect

barriers that impede the right of access of incarcerated persons."   Carper v. DeLand, 54 F.3d at

617.

Beyond demonstrating a lack of access, a plaintiff must also allege facts in his complaint

suggesting an actual injury.   See Lewis v. Casey, 518 U.S. at 351–52.   In Lewis v. Casey, the

Supreme Court held:

> [M]eaningful access to the courts is the touchstone, and the inmate therefore must go one
> step further and demonstrate that the alleged shortcomings in [prison correspondence] …
> program hindered his efforts to pursue a legal claim. He might show, for example, that a
> complaint he prepared was dismissed for failure to satisfy some technical requirement
> which, because of deficiencies in the prison's legal assistance facilities, he could not have
> known. Or that he had suffered arguably actionable harm that he wished to bring before
> the courts, but was so stymied by inadequacies … that he was unable even to file a
> complaint.

Lewis v. Casey, 518 U.S. at 351 (internal quotations and citations omitted).   As Lewis v. Casey

explains, the actual injury requirement is not satisfied by the impairment of any legal claim.   See

Collier v. Nelson, 202 F.3d 281 (10th Cir. 2000)(unpublished table decision)(quoting Lewis v.

Casey, 518 U.S. at 354).   Prisons must provide resources "that inmates need in order to attack

their sentences, directly or collaterally, and in order to challenge the conditions of their

confinement."   Collier v. Nelson, 202 F.3d 281 (citing Lewis v. Casey, 518 U.S. at 354); see also

Wolff v. McDonnell, 418 U.S. 539, 576 (1974) (chief aim of access precedents is to "protect[ ] the

ability of an inmate to prepare a petition or complaint").   "Impairment of any other litigating

capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction

and incarceration."   Collier v. Nelson, 202 F.3d 281 (citing Lewis v. Casey, 518 U.S. at 354); see

also Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x 965, 967 (10th Cir. 2001) (affirming

dismissal of access to courts claim, and noting "it is not enough for [plaintiff] to state that he is

unable to file motions or briefs").

As to litigation resources, prison officials must provide an inmate with at least some incidentals necessary to pursue legal action, such as paper, a pen, copying and postage.  See Bounds v. Smith, 430 U.S. at 824 (pen and paper); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir. 1980)(copying); Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978)(postage).   However, "[r]easonable regulations are necessary to balance the rights of prisoners with budgetary considerations."   Twyman v. Crisp, 584 F.2d at 359.   Prison officials are not required to provide inmates "with an unlimited right to free postage in connection with the right of access to the courts."   Twyman v. Crisp, 584 F.2d at 359.   Prison officials may also place "reasonable limits on amounts 'advanced' to inmates for copying and postage" when the inmate is in arrears. Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x 965, 967 (10th Cir. 2001)(blessing policy that limits free postage where inmate account is more than $300 in arrears).

A survey of Tenth Circuit case law reflects that prison officials do not violate the right to access courts where they provide the equivalent of at least two free stamps per week.   See Twyman v. Crisp, 584 F.2d 352, 358 (10th Cir. 1978)(rejecting access to courts claims where prison officials provided two posted letters per week if inmate had less than $5.00 in trust account); Smith v. Cooper, 2 F.3d 1161 (10th Cir. 1993)(unpublished table decision)(prison officials did not violate the constitution by "permitting two free legal letters per week for indigent prisoners"); Collier v. Nelson, 202 F.3d 281 (10th Cir. 2000)(affirming dismissal of access to courts claim where plaintiff obtained 4 free stamped envelopes per month, and there was no actual injury); Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x at 967 (rejecting access to courts claim where inmates were "allowed no more than a $2.00 per month advance on future earnings for copying and postage").

When evaluating postage limitations, several Tenth Circuit cases also consider the plaintiff's litigation history and the duration of time where he lacked postage.   See, e.g., Cotner v. Knight, 61 F.3d 915 (10th Cir. 1995)(unpublished table decision)("[A]s evidenced by the Plaintiff's numerous pleadings within this case alone, he has not been denied access to the courts by a lack of photocopying and postage"); Guinn v. Zavaras, 100 F.3d 967 (10th Cir. 1996)(unpublished table decision)(The "law "does not guarantee an inmate the wherewithal to transform himself into a litigating engine capable of filing any type of action"); Beville v. Ednie, 74 F.3d 210, 213 (10th Cir.1996)("the length of incarceration without access to legal materials may affect[ ] whether a prisoner's rights were violated"); Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994)("there may be cases where a prisoner is denied access for such a short time that prejudice would have to be shown"); Barry v. Wilson, 91 F.3d 159 (10th Cir. 1996)(unpublished table decision)(finding a five day delay in access to legal materials was not a constitutional violation).

## ANALYSIS

The Apodaca's Original Complaint alleges that prison officials violated his right to access courts in January of 2019 by limiting his right to free postage when his inmate account was over $300.00 in arrears.   See Original Complaint at 3-5; CCA-Northwest New Mexico Correctional Center Inmate Request, attached to Original Complaint at 13.   Ms. Valdez allegedly told Apodaca that he was not indigent because he had $0.47 cents in his inmate account, but the account was purportedly frozen.   See Original Complaint at 5.   Although inmates "at [NNMCF]" receive "two [free] stamped envelopes" per week, it appears Apodaca had already used that allotment and still wished to mail letters to the U.S. Board of Veteran's Appeals; the United States Supreme Court; and New Mexico's Fifth Judicial District Court.   See Original Complaint at 4-5.   The Original

Complaint further alleges that without unlimited free postage, Apodaca must spend all of his inmate earnings on legal fees and cannot buy "t-shirts, shoes, socks, sweat[s] top[s] or bottom[s], razors, music, food, [or] . . . healthcare items" from the prison canteen.   Original Complaint at 4. Apodaca only has access to the items NNMCF issues, i.e., "two stamped envelopes and two piece[s] of paper, a bar" of "motel soap[] and motel shampoo, one razor, and a small tube of toothpaste and two rolls to toilet paper," which he believes is "criminal."   Original Complaint at 4-5.

As the Screening MOO points out, prison officials do not violate the Constitution where, as here, they provide two free stamps per week and charge for any additional postage.  See Twyman v. Crisp, 584 F.2d at 358 (rejecting access to courts claims where prison officials provided two posted letters per week if inmate had less than $5.00 in trust account); Smith v. Cooper, 2 F.3d at 1161 (unpublished table decision)(prison officials did not violate the constitution by "permitting two free legal letters per week for indigent prisoners").   The Tenth Circuit further holds that prison officials may decline to provide free postage when an inmate's account is in arrears.   See Harrison v. Bent Cty. Corr. Facility, 24 Fed. App'x 965, 967 (10th Cir. 2001)(upholding prison policy that limited free postage to accounts that are more than $300 in arrears).   Accordingly, the Screening MOO determined the Original Complaint failed to show any Defendant violated Apodaca's right to access courts, because: (i) NNMCF provides two free stamped letters per week; (ii) Apodaca's inmate was more than $300 in arrears when NNMCF failed to provide surplus postage; and (iii) Apodaca managed to submit voluminous filings in this case and in other Federal Court cases.[2]   See Original Complaint at 3-5; CCA-Northwest New

---

[2]Excluding this lawsuit, the federal CM/ECF filing system reflects that Plaintiff filed at least four other lawsuits in this Court after the mailing issues in January 2019, 19-cv-0147 WJ-JFR; 19-cv-0348 JCH-KRS; 19-cv-0571 JCH-GBW; 19-cv-1209 WJ-KBM.

Mexico Correctional Center Inmate Request, attached to Original Complaint at 13.

Alternatively, the Screening MOO held that the Original Complaint fails to demonstrate prejudice as a result of the postage limitations.  In the Original Complaint, Apodaca does not allege that he needs postage "to attack [his] sentences, directly or collaterally," or "to challenge the conditions of [his] confinement."  Collier v. Nelson, 202 F.3d 281 (citing Lewis v. Casey, 518 U.S. at 354).  There is also no indication how long he went without postage, or how any mailing delays impacted a non-frivolous legal claim.  Construed as a whole, the Original Complaint suggests any injury is traceable to Apodaca's "failure to use his monthly allotment in a responsible manner," "as opposed to" the postage limitations.  United States v. Santiago, 199 F. Supp. 3d 1287, 1289–90 (D. Colo. 2016)(dismissing access to court claim based on postage limitations); see also Guinn v. Zavaras, 100 F.3d 967 (noting the "law "does not guarantee an inmate the wherewithal to transform himself into a litigating engine capable of filing any type of action").  The Screening MOO, therefore, concluded Apodaca failed to demonstrate a violation of his right to access courts under state or federal law.  See Cordova v. LeMaster, 2004-NMSC-026, ¶ 10, 136 N.M. 217, 136, 96 P.3d 778, 781 (demonstrating that New Mexico looks to federal standards in defining access-to-courts claims); State v. Vincent, 2005-NMCA-064, ¶ 26, 137 N.M. 462, 470, 112 P.3d 1119, 1127 (applying federal law to claim involving the right to access courts).

Although the Original Complaint only explicitly raises an access-to-courts claim, the Court discerned Apodaca may also intend to raise a conditions of confinement claim under the Eighth Amendment and 42 U.S.C. § 1983, based on the lack of free amenities.  Assuming this is true, however, the Screening MOO determined the facts are insufficient to state a cognizable Eighth

---

In this case, Apodaca filed a response opposing initial review; a motion for default judgment; an affidavit in support of default judgment; two ex parte letters, and two notices regarding his claims and removal to this Court.  See Docs. 6-12.

Amendment claim.   The Original Complaint alleges Warden Smith told Apodaca he "must choose between legal mail or his coffee."   Original Complaint at 4.   As the Screening MOO notes, such statement is consistent with binding precedent.   The Tenth Circuit holds:

> To require a prisoner who wishes to prosecute several legal actions simultaneously to have to choose occasionally between stamps and coffee is certainly no more a restriction than that which any indigent pro se non-prisoner must face.

Twyman v. Crisp, 584 F.2d at 358.   Said differently, prison officials do not violate the Constitution  by forcing an inmate to choose between canteen purchases and prolific litigation. See Cosby v. Meadors, 351 F.3d 1324, 1327 (10th Cir. 2003)("When a prisoner has sufficient income to pay a monthly partial filing fee and instead spends his money on amenities at the prison canteen, he cannot be excused for failing to pay . . . ."); Childs v. Ortiz, 259 Fed. App'x 139, 141 (10th Cir. 2007)(rejecting argument that prisoner could not comply with court orders, where he had to "choose between basic hygiene necessities monthly and monthly postage").

The Screening MOO further found no indication that the limited provision of free hygiene items impacts health or sanitation, as required to state an Eighth Amendment claim.   See DeSpain v. Uphoff, 264 F.3d 965, 973 (10th Cir. 2001)("The constitution does not mandate comfortable prisons[;] . . . a prisoner must show that conditions were more than uncomfortable, and instead rose to the level of conditions posing a substantial risk of serious harm to inmate health or safety")(quotations omitted).   Furthermore, even if the Original Complaint could clear that hurdle, it fails to show that any prison official had "a sufficiently culpable state of mind" in connection with the alleged wrongdoing.   See Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998)(setting out the subjective component of the Eighth Amendment test).

For all of the above reasons, the Screening MOO dismissed the Original Complaint without prejudice for failure to state a claim upon which relief may be granted pursuant to rule 12(b)(6) of

the Federal Rules of Civil Procedure and 28 U.S.C. § 1915A.   See Screening MOO at 18-19.   The

Court sua sponte permitted Apodaca to file an amended pleading curing the above pleading defects

by February 14, 2021.   The Screening MOO warned that the failure to timely comply would result

in dismissal of this action with prejudice and without further notice.   See Screening MOO at 18-

19.   Because Apodaca failed to comply or respond, the Court will dismiss this action, including

all claims raised in the Original Complaint, with prejudice and close the civil case.

   **IT IS ORDERED** that: (i) the Court dismisses with prejudice all claims raised in the

Plaintiff Victor Apodaca's Prisoner Civil Tort Complaint Pursuant to the New Mexico Tort Claims

Act, 41 N.M.S.A, filed March 21, 2019 (Doc. 1-1), pursuant to rule 12(b)(6) and 28 U.S.C. §

1915A, and (ii) the Court will enter a separate Final Judgment dismissing this case.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Victor Apodaca
Grants, New Mexico

   *Plaintiff pro se*

Daniel P. Struck
Jacob B. Lee
Struck Love Bojanowski & Acedo, PLC
Chandler, Arizona

--and--

Deborah D. Wells
Debra J. Moulton
Kennedy, Moulton & Wells, PC
Albuquerque, New Mexico

   *Attorneys for the Defendants*